First case of the afternoon is Central Management Services v. Illinois Labor Relations Board. For the appellant, Mr. Weiner, and for the respondent, who's going to argue, or both of you, you've divided your time. All right, you may proceed. May it please the Court, This case involves the issue of whether the regional managers, or sometimes called supervisors, of the Division of Environmental Health and the Office of Health Protection of the Department of Public Health are supervisory employees under the Illinois Public Labor Relations Act. As you're well aware, in order to be a supervisory employee under the Act, the first thing is that the employee must perform work that is substantially different from that of his or her subordinates. The Administrative Law Judge found at page 7 of her recommended decision in order that the principal work requirement in this case had been met. Specifically at page 7, she states, In this case, the record demonstrates that the work of the petition for employees is obviously and visibly different from that of their subordinates. In addition to fieldwork, regional managers perform many administrative duties not required of their subordinates. There is evidence in the record that the regional managers must address time-off requests, complete annual performance evaluations, review final probationary evaluations, answer work, schedule changes, issue disciplinary documents, and sign off on personnel transaction requests. Based upon the foregoing, I find that the principal work requirement is satisfied. Now what's interesting about this is in this very first statement of the ALJ, there's a finding really that they perform all these functions. And in that case, in this case, that is the essence of this case. They actually do perform those functions in these three regions. And more specifically, as set forth on page 21 of the hearing transcript, in generally describing their work, it was stated that they have the responsibility to ensure that all the environmental health responsibilities of their region and those counties and local health departments contained within it complete that mission. In addition, again on page 21, line 16 through 23, they have the responsibility above and beyond the local but separate and distinct somewhat from the central office. So it is only up to the regional supervisor to ensure, quote, the work gets done. That includes supervising these individuals under their direct supervision within the regional office of the environmental personnel, plus when and if necessary to actually go out and do the work as well. And the testimony was that it was basically a 50-50 proposition that whether they would be supervising from their offices, handling supervisory duties, or going out and working in the field with their subordinates. So that's basically what they do. And notwithstanding that, the ALJ says, well, they don't satisfy any of the indicia, 11 indicia for qualification as supervisory employees. As your honors are well aware, the statute has satisfied just one indicium. All we need is one indicium. So what I'd like to do is spend a few minutes with you this morning and discuss the specific issues involved. The evaluations, the direction of employees, and the discipline of employees. If the regional supervisor makes a recommendation, but that's not a binding recommendation, is he considered a supervisor? I think this court has held that you have to have, quote, effective recommendations. Your recommendations have to be effective. It is also held, though, that just because they're reviewed by other people, superior people to them, that that does not either make them not supervisors or make them not managers. This case is just about the supervisory aspects. And so it's determined below. I did not obviously handle this below, but I'm representing the central management services and the state in handling it here. And so in answer to your question on the supervisory issue, are these people supervised? Seven to 11, two of them are 11 subordinates and one is six subordinates working in the regions. But they report to somebody that's in the union, they being these individuals, being locals in the union, right? When he's not acting up, yes, yes. Locals in the union, they report. So the division chief to whom they report is in the union, and they have to run stuff by him, but they are supervisory, managerial, and he's not? And other regional supervisors are in the union. I mean, I understand the interest of central management services, and I guess it's not dispositive, but how would I ever explain this to somebody that doesn't know anything about state government or unions or contracts? You've got these guys over here, and they're in the union, and these guys that do exactly the same thing, but they're not in the union, but the guy that's their boss, the division chief, he's in the union. But these guys can't be, according to CMS. I am so glad you asked that question. As they say in the debates. Just don't call me my friend. Always. It's just a privilege here. Getting serious, I'm glad you asked the question, because this is a question that, the answer to that question is the reason there's a differentiation is because the standard that's applied by the Labor Board for each individual, we have to prove or not, it's our burden to prove that they meet the qualifications. So instead of taking a position like the Seventh Circuit did in the Riley case, or the NLRB does, takes a position, and if it's not subject to manipulation, et cetera, if it's a legitimate position description, then all those in that position are excluded. That's what should happen in these cases. The board is, this board, last board anyway, has set a precedent that says we have to take them one by one. So what's happening is exactly as you said. People are being categorized, are included in the bargaining unit on their own individual circumstances. For example, one of the worst ones is if you get someone who's a terrific administrator and doesn't issue discipline because they work with their employees, or a new person who hasn't had the opportunity to evaluate discipline, discharge, direct anybody, they'll be included in the union. But the person next to them, or their equivalent, because they do direct and have been there a while and discipline people and evaluated people with a consequence of reward, they're excluded. Same exact position, really same duties. And I think that's what the court in Freeport was trying to get around to saying in a sense, or they did say it in a sense, it's the authority that people have, meaning it's the authority that's vested in them by their position. Now, they didn't say that, but I'm just extending that from what I... Well, even if we do it individually, how can it be argued that they have greater, or they have the indicia of managerial authority when the person to whom they report does not? Well, that's a different issue. I don't have a problem with that, I'll tell you what. The person to whom they report may only supervise one person, two people, or maybe three people, they're a higher level, whereas these people supervise 11, 11 and 7 people, and in other cases we've had people supervising, the bargaining unit person is above them, but they're supervising 50 people, like in a secretary of state driver's office situation where there's 50, 70 people that are supervised by that one person. But that person's supervisor may well be in the union. And I don't have a problem with that because they may not be supervisors, they may be managers, but they may not be supervisors. And again, it devolves down to the evidence presented in an individual basis. At some point I hope to be able to bring that issue to your attention. I've always been frustrated by this. Well, here we're dealing with the specific functions exercised by Mr. Smet, who's one of the three, and for whom there was a stipulation that all of the duties and functions of the other two were the same. Also noted here is that the union waived its right to present its case in chief, as found by the ALJ, relied solely upon the evidence submitted by the state, and did not submit any evidence of its own. So we're dealing here with basically undisputed facts. Among those undisputed facts are the fact that this employee, on behalf of all others, does perform basically three indicia of the functions of supervisors. They evaluate, they direct, and arguably they can discipline. Specifically in terms of the evaluation, the decision is really against the manifest weight of the evidence as to the power to evaluate. Employer Exhibit 3 at record 07070 is the evaluation of Mr. Dell, a subordinate to Mr. Smet. And there was evidence as to someone, there was another evaluation in there dealing with a subordinate to a subordinate of Mr. Smet, and that should be disregarded by the court, obviously, in determining whether Mr. Smet himself evaluates or not. What is undisputed is he evaluates his direct reports, and there are like six to eight of them, maybe more, maybe there's ten, depending on which document you're looking at in the organizational charter in the evidence-induced hearing. But he evaluates all his direct reports, and Mr. Bell is one of them. Also, it's undisputed that these annual evaluations, distinguished from probationary evaluations, or evaluations of probation employees, can be used for disciplinary action or as part of an ongoing progressive discipline. And again, the ALG recognizes that in her recommended decision or page four. Isn't it a fact there was only one disciplinary action in the 13 months before the hearing? That's absolutely correct. Well, if there's only one, that's an indication he doesn't do much supervising, isn't it? Well, first of all, I'm glad you asked that question, too. In Freeport, the Supreme Court made very, very clear that you never have to actually exercise a function that you have the authority to exercise. They even have a footnote on it describing what they're reading, quoting from federal law about it. It's the authority that counts. It's not the number of times. And that's the language of Freeport. It's not the number of times. And actually, that was a basis for reversing. Here, too, they rely upon the fact that there's only one in 13 months. That may be because they're terrific supervisors and they don't have to discipline people. I grant you that the evidence could have been more expansive, but it could be that they're just running a good shot. But again, it was unquestioned that it's undisputed, I believe, that they had the authority to discipline. But I grant you that there was only one in 13 months. And in fact, in fairness to the court, that discipline was really a joint decision by Mr. Smith's supervisor himself. I don't view that as fatally defective, but I bring that to the attention of the court, as an officer of the court, that that was a joint decision. But I think that if a supervisor... And it was a joint decision on my side of the company, because it was a delicate matter. There's testimony in those words. It was a delicate matter. And so it was something that may have involved... I didn't get that specific. It may have involved, obviously, something that was a concern that was shared with this supervisor in the joint decision. And then he solely drafted the written reprimand, which is contained in Quarters Exhibit 7 of 082 of the Convolution. So I think that was sort of a unique situation. It didn't detract from the authority that these regional managers had to supervise in general. So we've discussed the discipline. On the evaluation, as you see, I think the hearing officer, or I imagine the law judge, particularly relied upon this evaluation of the subordinate. Whereas it was very clear that Mr. Schmidt and Ergo a fortiori, I should say, all the other two supervisors clearly had the authority to evaluate their immediate report. This court wrote a decision back in 2008, CMS versus Labor Relations Board. Of course, all the cases contained that. But Justice Appleton wrote the decision, and I dissented. And in that case, the majority opinion says the alleged supervisor must have both authority to make operational decisions and exercise significant discretionary authority. Is that the controlling precedent in this case? I'm glad you dissented. I don't know what your dissent was, maybe before I adopted it. I don't think you even cited that case in your brief. But isn't that the controlling decision in our court? Well, if it was the majority, it's the controlling decision, Your Honor. But maybe we can go two to one the other way this time, I don't know. But being serious in responding, I think that that majority opinion actually is contrary to Freeport. To me, Freeport is clear as a bell. They go into a long, detailed discussion about this very, very point. And they found that the board was wrong in having the number of times the actual exercise and the number of times considered as being determined. That was one of the bases that they overruled the labor group. But even if it is the standard from your quote, both the authority and exercise significant discretion, I don't find that incompatible. When exercising discretion, you may decide not to discipline. And maybe this court was saying, and again, I'm not the court, I'm just trying to think of logical reasons why to apply. You know, the court may have said, well, you have to have the authority, and if, leaving out these words, and if you have occasion to discipline, then you should, you know, exercise significant discretion in imposing. Again, I mean, that's just logical response to what I'm trying to say here. I'm sorry, your time has expired, Mr. Warner. You'll have additional time on rebuttal. Pomerantz. Thank you, Your Honor. I'm sorry, Jacob. I please the court, Jacob Pomerantz, for appellate of the American Federation of State, County, and Municipal Employees. Your Honor, the employees here at issue are referred to as regional managers, regional supervisors, section chief, and regional engineers, which is probably the most accurate description for them. For civil service purposes, they were called, it's historically, really, a historical designation, SPS-A-H-8-8-H. They're part of a team of specialized professional, technical, and certified employees. As we discussed before, in organizational terms, they report to Ken Bronco, who is the division chief, who reports to David Kelp, who is the deputy director, who reports to the director. So they're pretty low down the chain of authority. At its most basic level, and we'll leave it to the board, to the attorney general, to defend the legalisms of it, but at the most basic level, this appeal has to fail because there is no evidence to support the employer's position. The employer says that, within the meaning of the act, which is an important phrase, because supervisor is something everybody thinks they know what that word means and they throw it around, but within the meaning of the act, it has a very specific function. In any event, the state argues that these employees, within the meaning of the act, have supervisory authority to direct, primarily because they grant time off and can do evaluations. Evaluations are not an independent indicator of supervisory authority under the statute, but only have a role insofar as determining whether the employee at issue has direct authority, and a supervisory role in discipline. But the act is explicit, and Freeport, as well as many other cases have said, that the act requires not only a role in those areas, but that the employee, in order to be a supervisor, has to have the discretion to exercise independent judgment and the ability to actually affect the terms and conditions of the putative subordinate. Well, if these regional supervisors are the ones familiar with these individuals and they write the evaluations and then the superior, Runkle, doesn't have any knowledge different than theirs, isn't the regional supervisor's evaluation an effective, pretty much binding determination? Well, there's a number of things to be said about that. One, the record itself says that the evaluation is cooperatively done between the regional engineer and the putative subordinate, so they work together on it. It's really sort of a tool in management that really isn't like a disciplinary type tool. It's supposed to be a discussion, going back and forth. You know, how can we be doing this better? Should we be doing that? What should our evaluations be? How do you think you did? And there are standards that are developed both from, let's call it downtown, from central, and developed with the employee at question. And then whether those standards are met is objective. There's nothing discretionary about it. You did so many inspections or you didn't do so many inspections. So he's reporting up the chain of command that one, they went through this process, and two, you know, these are the objective findings. Now, Runkle testified that if there was anything out of the ordinary about these things, he would get involved. So he's really – But again, he doesn't have any day-to-day contact with these employees. No. But the fact that the regional engineer or regional manager, whatever we're going to call him, is obligated to report what he objectively sees is not a supervisory power. I mean, the parking lot attendant who keeps track of how many cars are going in or who's parking. You know, if the lieutenant governor parks in the wrong spot and the parking engineer and the parking attendant reports it, that doesn't make them a supervisor. That makes them – you know, he's doing his job. He's in quality control. So all these 11 initiatives, supervisory, authority, or objective, hiring, transferring, suspending, laying off, recalling, promoting, discharging, directing, rewarding, or disciplining, those are all objective. You don't – the person making the decision doesn't even have to think about it. He just applies the rule. They very well could be, and that's why the legislature added the phrase, provided it's done with independent judgment. So all of those things can be routine, professionally required, but obviously they also can require discretion, and it depends on the circumstance. So if I get to choose between three people who to hire who I think is best, that's independent judgment. That's not being enforced on me by anybody. If I can tell employee E that, you know, go home. You know, I don't think you're behaving appropriately. Go home. If I can do that, I have the independent discretion to do it. But if all I can do is report, you know, Mr. Jones came in three hours late because I'm obligated to report tardiness, that's not independent judgment. And, again, here the terms are – to the extent they were used, they're totally conclusionary. There's no evidence at all as to what criteria was used in giving time off or not. In other words, if an employee is entitled to so many vacation days, they're entitled to so many vacation days. You know, now – These regional supervisors could not send an employee home if he was misbehaving on the job? You wouldn't know it from this record. There's nothing in the record. You didn't present any evidence. Why would I? Our position is that this isn't like a game for attorneys. These people want to be in the union. We want to get them into the union. The law would allow them to be in the union. We don't need to prolong these procedures, you know, just to give me a chance to, you know, put out some witnesses. The burden is on the employer or whoever is objecting. It could be the union as well. Whoever is trying to keep the employee out of the benefits of the act, the burden is on that party to demonstrate why they shouldn't get the benefits of the act. If the party hasn't demonstrated it, you know, I don't have to do anything. It's assumed the employee is entitled to it unless the objector can demonstrate that they're not. You know, I was earlier talking about a decision of our court where I dissented. But there's another decision which came out September 28, 2011, written by Justice Steigman, and he complained about AFSCME's position that basically everybody in the state ought to be included in the union, that there aren't any supervisors. Is that the situation we have here? No. He did acknowledge the governor was a supervisor. Right. I'm actually familiar with that colloquy. And at some point, you know, we'd go through the dialogue that occurred before that quoted period of the opinion. But, no, our position is that they have not demonstrated in this case that the employees… So Runkle, is Runkle a supervisor? Runkle's in the bargaining unit. Runkle is a member of the union. No, he's more than a member of the union. He's in the bargaining unit. Okay, so you dispute that even he's a supervisor. No, I'm not disputing that. That's not the case in front of us. There's no evidence on it. We didn't take evidence on it. It does sound like you're saying nobody's a supervisor. No. Tell me who's a supervisor here. How can I tell you? We have cases for that. It has to be a record. I can't just, you know, look out the window and say, that guy's a supervisor, that one's… So all these employees in the seven locations around the state do not have an on-site supervisor? Yes, I think that's correct. And a statutory supervisor, yes. This is not uncommon for state service. There was a case involving the secretary of state where these driver license facilities, which have scores of employees, were found not to be supervisors or managers because they didn't meet the standard of the law. You know, these are not like kindergarten kids. They don't need supervision in that punitive kind of sense. And whether they did or didn't, it's really not for us to decide. It's for the legislature to determine. So, I mean, I'm not troubled by that. They're professionals. They have a job to do. They have to account for what they do. It's reviewed. Their accounting is reviewed. And, you know, I think the state gets its money's worth. They don't need somebody, you know, blowing a whistle after them every five minutes. So, that's interesting. Let's go back to the facts of this. Your time is up, sir. All right. Thank you. Mr. Ellis? Good afternoon, Your Honors. Assistant Attorney General Carl Ellis for the Labor Board. Your Honor, just to answer Justice Cook's question earlier, I think that's an important point that I don't want to see get lost. The idea is there may not be a statutory supervisor in each of those seven regional offices, but that doesn't mean there isn't someone there who is a team leader or in charge who reports back. The statute is very specific about what has to be shown for someone to be a supervisor. And another point that also needs to be emphasized is it really is true that under the statute, if the petition is proper, the board has to approve it. There has to be someone coming forward and saying that someone falls outside the definition of the act, and they have to prove that. And so it's not uncommon for a labor union to not put on evidence and to wait until the employer puts on his evidence. And that's the way they've always been. These cases have always been decided, as far as I can tell. It's very unusual to see an employee go first. There's another case, Village of Maryville, by the 5th District. And they talk about the concern where you have somebody who's basically a supervisor and people who are employees, and they're in the union. They're both in the union. They say that's a problem. Well, it's only a problem if someone objects to it. I mean, our statute allows unions of supervisors, so even that's a possibility. The question really is whether the employees who are petitioning fall inside Section 3R. And there's a lot of factors in that very dense statute. If they don't meet the requirements of the statute, they're not statutory supervisors. That doesn't mean they're not supervised. It just means that the people who are applying to be in the union are allowed to be in the union. The language they used in Maryville, the exclusion of supervisory employees from bargaining units ensures employers that pro-union bias will not impair the supervisor's ability to apply the employer's policies to subordinates according to the employer's best interest. Isn't it important to have supervisors? It is. It's my position that there are supervisors. It's just that there are not statutory supervisors in every unit of government. And that's the test. And if I could, I'd like to talk about the fourth element because we've sort of lost it in this case. No one has mentioned it yet, and I think it's the home run argument, which is that employees have to spend a preponderance of time, not just being general supervisors, but doing the supervisory functions that are listed in Section 3R, one of which, by the way, is not evaluated. So the question, I think the simplest question to ask is, do these employees that are before the court, the two things that are left, discipline or direct, those are in the statutory condition. And with regard to discipline, the evidence in this record is crystal clear. No one gets disciplined without a lot of talk, not only at Mr. Runkle's level but senior to him, and it took weeks to come up with exactly what they wanted to say about this person they were disciplining. That goes a long way to show you that the petitioning employees here are not independent in their disciplining decisions. And the Board reasonably made that inference. It's certainly not an inference that is clearly erroneous, which is also the burden here that Mr. Weiner has to show that the Board has committed clear error. I think you can quickly put aside the discipline question because of that. It's the only evidence in the record. We're not taking the position that no disciplinary evidence could ever show that they don't have disciplinary authority. My point is just that when there is a discipline, as there was here, we see what the authority is, and the authority is a very conversational type of authority. The employee doesn't have independent authority in the discipline, so he falls outside the statute. And the same is true with regard to direction. But my point here has to do with that fourth element, that preponderance of time. This almost would be a great case because we've got two Fourth District decisions that seem to calculate preponderance differently. So maybe this would be the case where the Court might explain whether it's the 1991 decision or the 1996 decision. They both have slightly different formulations. But in this record, there's no evidence of how much time anyone is spending doing anything. Mr. Dr. Cole testified that it was his understanding that about 50% of the time was spent doing supervisory work. But he didn't talk about the 11 indicia, which is what the statute requires the work to be. And Mr. Weiner is talking here about proving flex time, proving time off, and doing those employee evaluations. Well, those employee evaluations, the testimony was that they take about two or three hours per employee. There's no way that's taking a preponderance of time if you add them all up. Assuming that what they're doing in doing those evaluations, filling out those forms, is statutory supervisor type work. You agreed to the first point that regional supervisors have principal work substantially different from that of the subordinates. And that's almost routine in these cases. That first element is never in dispute because if they're doing exactly the same work, then usually the AFSCME would say that the supervisor should be in the unions. Well, isn't it inconsistent then to say they're very different than the employees and then you say, well, wait a minute, they don't spend the preponderance of their supervisor? No, there's separate elements. The first element is that they do different work. The third element is that they do that one of the indicia of authority with independent, I want to get the correct language, with using independent judgment. And as my co-counsel pointed out, there's a lot of these functions, all 11 of them, could be done with independent judgment or they could be done without independent judgment. And if what you're doing is filling out the paperwork that your boss requires you to fill out and counting heads and checking back, and that's really crystal clear with regard to the time off authority here. There was not any evidence here that anyone had ever been denied ever time off. And that's because CMS provides very concrete, specific rules for granting time off. And supervisors follow those rules. So when they do that, they're not actually doing anything statutory that would trigger the supervisory authority. But I would urge the court to look at that starting point, the preponderance, and ask how is it on this record, this record, that you can say that a preponderance of time of any of the three employees here is spent doing any of these 11 indicia. I don't think that can be done. And so I think this case could be fairly quickly settled or decided. We can argue about whether those evaluations do or do not satisfy the statutory provisions. The board found that they don't, and I can certainly do that. But even if they do, we're talking about a couple hours a year. Culp testified that the regional supervisors, it was a 50-50 proposition. He said that it was his understanding that probably it was about 50-50. He was not the one who had ever supervised the individual's repetition. He testified that that was his understanding from what Mr. Runkle had told him. So that evidence is pretty weak to begin with. But then it was pretty clear from what he's talking about. He's not talking about those 11 indicia. He's not talking about independent judgment. What he's talking about is in his mind, these are the people who supervise the people that are under him. And I don't have a problem with that. He testified truthfully. But there is a difference between what a layperson might say a supervisor is. And indeed, these people are called supervisors. They're called regional supervisors. The question for the court is whether their regional supervisor functions trigger this particular statutory language. And that's the place where the employers typically don't meet their burden. And I want to emphasize that point too. It is CMS's burden to establish that the board has done something improper here. And without any evidence of time, they can't possibly meet the requirements of that test. So I guess that's what I have to say. Are there any questions? There appear to be none. Thank you. Thank you. Mr. Weiner. I'll have to cover. But first of all, the Secretary of State case is not a case here yet. It's pending here. There's no Secretary of State case, Mr. Parmer. The fact that there are dozens of people supervised in these driver's license facilities is coming before the court. And it's presently pending before the court. I don't know if we have an oral argument date or not. It's just been so overwhelmingly busy. I apologize to the court for continuances and other things. But it's just been so overwhelming. But that is not – there's no case saying that if you supervise 50 people like some of these people do, then you're not a supervisor. It isn't involved. The record will contradict the ILRB attorney when it says it's a collaborative record. They work together on evaluations. They only get involved when there's a red flag or something that I have a question about. That's the testimony. But otherwise, he's never talked to Mr. Schmidt about an evaluation before it was completed. He never vetoed or overruled it. This is all at page 42 of the transcript. As to the argument on preponderance, here's what's been happening. You've seen it. The primary thing that comes under direct. Direct is the key word. And once there's a determination, and that's what these people do. They direct. They supervise. They monitor. They oversee. They do all these things to make – to run – for the mission as stated in this record, to run the – make it work, make the – run the facility, run the operation. Once you eliminate direct, once you find that they can't direct, well, then they only have 5% of their time left. It's automatically not a – by mathematically, it can't be a preponderance of their time. And that's what's been happening to us before the board. Hopefully that will change, but right now, this board for the last four years has consistently used that kind of technique. And if they can't do it on that, then they go on the independent judgment. Or you can do all these things, but you don't do an independent judgment. In fact, this hearing officer, this LALJ, found that they have to do it by – without guidelines or review by others, expressly rejected by this court, you know, particularly in the ICC case. And managerial, but nevertheless, same reasoning would apply. Time off again here. Time off – there are some restrictions on time off. But who has the sole and final decision maker? Page 53 of the transcript. It's the regional manager. Is Mr. Spedt free to approve or deny based upon his own independent judgment? Yes. So all those statements that were just made to you are contrary to the record. As far as the evaluation is concerned, the assistant attorney general is correct. There's no word evaluation in the 11th edition. There is a word, and it comes under reward. So if there's some consequence to an evaluation, such as in this case if there's a merit employee, they will determine whether it's a raise or not. If there's a probationary employee, even a subordinate of Mr. Spedt and the two other regional supervisors, they will determine whether that person is employed or not. And as undisputed, as Your Honor said, there's no contrary evidence, undisputed, that it can affect discipline or be a part of the disciplinary process. So they do do that. They do approve the time off. They do approve the four-day work with granted, taking into consideration the present current extent director's views on those things. But they make the actual decision whether the person gets the four-day week or not. Let's talk about the direct, my two minutes remaining here. The administrative budget conflates and puts in, actually, evaluations and all this other stuff in the term direct, because they do it. And she says direct encompasses reviewing and monitoring activities, scheduling work hours, approving time off, this is page nine of her recommended order, approving time off and overtime, assigning duties informally, evaluating job performance when the evaluation is used to affect the employee's pay or employment status. Thank you, sir. That's what these people do. We'll take this matter under advisement and stay at recess until we're ready for the next case.